## THE PEOPLE *v.* DONES.

### APPEAL from the District Court of Humacao.

#### No. 45.—Decided December 5, 1905.

EVIDENCE—VOLUNTARY CONFESSION—HEARSAY EVIDENCE.—Where the accused has made a voluntary confession to witnesses the testimony of the latter is not hearsay but direct evidence and admissible as such.

APPEAL—INSTRUCTIONS OF COURT TO JURY.—Under section 266 of the Code of Criminal Procedure counsel have the right to submit to the court written requests to charge, and if they fail to exercise this right at the trial, or make no objections to the court's instructions, they cannot afterwards attack the same as erroneous.

ID.—"BEYOND A REASONABLE DOUBT."—"Beyond a reasonable doubt" does not mean the absence of any doubt whatever but a moral conviction of the guilt of the accused.

ID.—STENOGRAPHER'S NOTES.—In order that the instructions of the court taken stenographically may form part of the transcript of the record and be used on appeal, it is necessary that they should bear endorsements setting out the decision of the court and signed by the judge; and in this way the objections made thereto may be considered the same as if they were contained in a bill of exceptions or statement of facts.

ID.—EVIDENCE—VERDICT OF GUILTY.—In order to attack a verdict, declaring a defendant guilty, on the ground that it is contrary to the evidence, it is necessary that the transcript should contain a bill of exceptions or a statement of facts, the former prepared in accordance with the provisions of sections 298 and 299 of the Code of Criminal Procedure, and the latter according to the provisions of rule 17 of the district courts.

ID.—MINUTES OF THE COURT.—Although the stenographer's notes constitute *prima facie* the minutes of the court, the minutes should contain only a brief statement or memorandum of the facts occurring during the progress of the trial, and they have never included in their signification the testimony of witnesses; wherefore they cannot be considered as a bill of exceptions or statement of facts.

ID.—Where there is no bill of exceptions or statement of facts and it not appearing from the transcript of the record that any fundamental error has been committed which would warrant the court in granting a new trial or in reversing the judgment, the same should be affirmed.

The facts are stated in the opinion.

*Mr. Jose de Guzman Benitez* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE FIGUERAS delivered the opinion of the court.

The case submitted to the Supreme Court for decision is

an appeal taken by Francisco Dones Ramos from a judgment of the District Court of Humacao sentencing him to death.

On March 21st of the current year the *fiscal* of said court filed an information against the appellant, which he swore to, charging him, in conjunction with others, with the crime of murder in the first degree, committed as follows:

"On or about the 25th day of February, 1905, in the town of San Lorenzo, in the judical district of Humacao, Porto Rico, the defendant, Francisco Dones, then and there, with express malice aforethought, wilfully and deliberately, inflicted a fatal wound with a dagger upon José Cordovés Berrios, as a result of which the said Cordovés Berrios died on the 1st of March, 1905. And that defendant, José Ramón Anguita, illegally advised and encouraged, with express malice aforethought, the said Francisco Dones to commit the said crime of murder. And that defendant, Isidro Guzman, illegally advised and encouraged, with express malice aforethought, the said defendant, Francisco Dones, to commit the aforementioned crime of murder. And that the defendant Maria Rodriguez, illegally, with express malice aforethought, advised and encouraged the said defendant, Francisco Dones, to commit the crime of murder. This act is contrary to the law in such case made and provided and against the peace and dignity of The People of Porto Rico."

On March 23d of the current year the defendant, Francisco Dones, in person pleaded not guilty.

On the following 10th of April an order issued in open court for the separation of the cause of Francisco Dones Ramos from that of the other defendants, in order that said Dones might be tried separately, and under these circumstances these proceedings continued their ordinary course.

The trial was therefore continued in the District Court of Humacao, and was concluded at two successive hearings held on April 17 and 18, 1905, and after the judge had charged the jury the latter returned the following verdict:

"We, the jury, find the defendant, Francisco Dones Ramos, guilty of the crime as charged; that is to say, of murder in the first degree."

On April 24th last, and in view of the failure of the defendant to show any cause why judgment should not be pronounced, the following judgment was rendered:

"Therefore, the court, after having heard, understood and considered the matter sufficiently, orders, adjudges, and decrees, that the defendant, Francisco Ramos, convicted of the crime of murder in the first degree, be transferred by the marshal of the District Court of Humacao, within the term of ten days, from the District Jail of Humacao to the Penitentiary of the Island of Porto Rico, and there held in safe custody by the warden of said penitentiary until Friday, June 26, 1905, on which day, between the hours of 9 a. m. and 5 p.m. said defendant, Francisco Dones Ramos, shall be hanged by the neck until dead, by the said warden of the penitentiary; it being further ordered that the clerk of this district court issue to the district marshal a certified copy of the verdict of the jury and of the sentence of this court in this case, and that the warden of said penitentiary make a proper return to this court showing the exact and faithful execution of this sentence, with the proper costs. Done in Humacao, over my signature, this 24th day of the month of April, 1905.—J. A. Erwin, judge of the District Court of Humacao. Attest: Enrique Rincon, clerk of the District Court of Humacao."

Attorney José M. Cuadra took an appeal to this Supreme Court on behalf of the defendant, the warrant of execution being stayed thereby by order of the sentencing judge.

There is no bill of exceptions, or a motion for a new trial, or any other allegations.

Everything heretofore set forth is contained in the transcript of the record on appeal, in two certificates issued by the secretary of Humacao bearing his signature and the seal of the court, appearing at folios 1, 2, 3, 4, 5, 103, 104, and 105, in which he certifies to their being true and faithful copies of the documents of record.

The intermediate folios, from 6 to 102, both inclusive, contain a transcript of the stenographic notes covering the testimony of 25 witnesses presented by the *fiscal,* and of 11 presented by the defense, in the form of questions and answers, the charge of the judge to the jury, and although

the transcript does not contain the signature of the former, the statement is made that the parties stated that they did not believe it necessary to extend said instructions, the stenographer, Arturo Muñiz, then certifying to the foregoing being a true and faithful copy of the stenographic notes taken by him at the trial, signing said certificate as such stenographer of the District Court of Humacao.

Taking as a basis the foregoing antecedents, Attorney Jose de Guzman Benitez filed in this Supreme Court, on behalf of Francisco Dones Ramos, a brief in which, after making a detailed narrative statement, he alleges the commission of the following:

### *Errors of Law.*

"First. Because the hearsay evidence of two witnesses, named Ruperto Felix Melendez and Juan Diaz, was admitted to prove the confession of the defendant.

"Second. Because the court, in charging the jury, erred as to the construction to be placed upon section 206 of the Penal Code.

"Third. Because it also committed an error in charging the jury on the weight of the evidence of the confession of the defendant, furnished on the hearsay evidence of the two witnesses mentioned.

"Fourth. Because an error was committed in tolerating the leading questions put by the *fiscal,* while the defense was limited to its right to examine and cross-examine the witnesses.

"Fifth. Because an error was committed in not receiving all the testimony proposed by the defense, for the purpose of impeaching the veracity of the aforesaid witnesses, Ruperto Felix Melendez and Juan Diaz.

### *Errors of Fact.*

"It is alleged that the verdict is contrary to the evidence:

"First. Because it accepts as true that the accused was in San Lorenzo on the night of Saturday, February 25th.

"Second. Because, even assuming that Dones had been in San Lorenzo on that night, the verdict accepts as proved that the defendant was the person who killed José Cordovés Berrios.

"Third. Because it accepts the confession of Dones as proved by

the testimony of the two witnesses, Melendez and Diaz, notwithstanding the fact that the falsity of their testimony had been established.

"Fourth. Because it accepts as proved the story of the dagger found among some pumpkin plants, as well as the information given the *fiscal* causing him later to send Captain Guerrero to look for two hours for said dagger.

"Fifth. Because it accepts as proved that the knife thus found belonged to and was used by Francisco Dones, upon the testimony of Agustin Collazo and Ramón Martinez, which does not constitute proof *per se* on the matter on account of being improbable.

"Sixth. Because it accepts as proved that the murder of José Cordovés Berrios was committed with this knife, without any attempt even having been made to prove by experts whether said knife showed marks or traces of human blood."

Resuming his argument, the appellant maintains that the verdict is contrary to law and the evidence, and, under the provisions of section 303 of the Code of Criminal Procedure and the powers of this court under section 164 thereof, prays for a reversal of the judgment, for the annulment of the trial held in this cause, and for a new trial.

The *fiscal* contested the appeal and prayed for its dismissal, with the costs.

Both counsel for the defendant and the *fiscal* made their respective oral arguments at the trial, being allowed all the time they considered necessary for their arguments in support of their contentions.

Let us consider, in the first place, the error of law alleged to have been committed in admitting the so-called hearsay evidence. According to the brief submitted to this Supreme Court, this refers to the testimony of Ruperto Felix Melendez and Juan Diaz. These witnesses, it is alleged, relate the confession made to them by the defendant himself, and this is in no respect in conflict with the provisions of section 7 of the Code of Criminal Procedure, nor can it be alleged that this evidence is hearsay in support of the allegation of the commission of the error of law described under number one of the brief under consideration.

This court, in the cause of *The People of Porto Rico* v. *Juan de Mata Eligier and Juan del Carmen Grolo*, from the court of Arecibo, decided November 20, 1905, in considering the same question, said:

"This point was fully discussed and decided on June 25, 1904, in the cause against Francisco Rivera, *alias* Panchito (P. R. Rep., Vol. 7 p. 325), in which reference was made to a considerable number of authorities, including among others, the work of Cooley on Constitutional Limitations, pages 379 to 383, inclusive, and the work of Greenleaf on Evidence, sections 214 and 215. With respect to this point, we do not believe it necessary to cite other authorities. It is clearly seen that the allegation cannot be sustained and that it is based on an incorrect construction of the law."

No; this testimony is not hearsay.

This testimony is considered as the confession of the defendant himself, and it is valid unless it be proved that it was obtained by coercion, violence, promise, or by any other means of forcing the will to act in that way by a powerful stimulus capable of overcoming the will in this manner. Such testimony is admitted by the penal laws of the United States, where we must seek the genesis of our substantive and adjective penal laws.

But it must be said here that this allegation of the brief is considered only on account of the very great importance of of this cause. We prefer on this account to be as tolerant as possible. And we say this because we will see later that neither by a simple allegation in this court nor by means of transcripts of the stenographic notes can we know what the witnesses testified to or whether their testimony was hearsay or not. The law provides an adequate means of bringing up on appeal, with the authenticity necessary, everything pertaining to the evidence.

Let us now pass to the second error of law alleged to have been committed by the judge in his construction of section 206 of the Penal Code. This section provides that no person can

be convicted of murder "unless the fact of the killing by the defendant is established beyond a reasonable doubt." In this connection there is transcribed in the brief that part of the charge to the jury explaining the meaning of a "reasonable doubt," and, as a matter of fact, we find nothing in the charges transcribed to which exception can be taken. But, furthermore, the judge asked counsel for the defense and the *fiscal* whether or not they wished to have the instructions include other points, and they both stated that they did not. This fact was acknowledged to be so by both parties at the time of the hearing of the appeal, and this shows the absolute impartiality of the judge of law, although in his brief to this Supreme Court counsel for the defense objects to the instructions, which show zeal on his part in the exercise of his professional duties, forcing him to exhaust all legal means possible in favor of the defense of his client, but do not show that the instructions given by said judge of law were really deficient.

Apart from these considerations and aside from the express waiver of further instructions by counsel, section 266 of our Code of Criminal Procedure specifies in a categorical manner the right of the parties to "present any written charge and request that it be given to the jury. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge presented and given or refused, the court must indorse and sign its decision. If part be given and part refused, the court must distinguish, showing by the indorsement what part of the charge was given and what part refused."

So that, even assuming that the charge to the jury was deficient or erroneous, which we do not believe, counsel who appeared in the case in the court of Humacao had a right under the law to supplement or correct it to the extent that the court might consider pertinent, and if they did not avail themselves of this right, even after the voluntary suggestion of the judge of law, it is not possible now to point out and take advantage

of deficiencies or errors in such charge, when at the trial it
was considered sufficient by counsel for the defendant and in
conformity with law.

The charge as transcribed by the stenographer covers
seven folios and discusses the meaning of "malice afore-
thought," explaining when it is express and when it is im-
plied, connecting it with the intent the existence of which
is proved by the punishable act itself; it refers to the respect
due the life of every man; it also describes the element of
lying in wait and the circumstances which characterize it, and
then affirms that if, under such circumstances and seeking in
advance a concealed and solitary place protected by the dark-
ness of night and, taking advantage of a moment when the
victim cannot defend himself, he is assaulted and killed, then
the crime committed is that of murder in the first degree, mur-
der in the second degree being the unlawful killing of a human
being with malice aforethought; then the judge states that the
guilt or innocence of the defendant depends on the evidence;
he defines the latter and considers it in its two aspects, direct
and circumstantial; he speaks of the necessity in most cases
of accepting evidence of the latter kind, because the instinct
of self-preservation would lead a man to avoid the presence
of witnesses when about to commit a criminal act, and the
judge explains that both kinds of evidence may serve to carry
conviction to the minds of the members of a jury, who must
decide according to their conscience, and, in this case, whether
the defendant was or was not in San Lorenzo on the night of
the crime; they must also examine the exhibits, and decide ac-
cording to their conscience whether the dagger before them
did or did not belong to Dones; whether it was found in the
manner and at the place which he indicated in his confession,
and whether it was the weapon with which the mortal wound
was inflicted on Berrios; the jury must carefully consider the
testimony of every witness and weigh its value, which must
be governed by the opinion in which they hold the credibility
of the witness testifying; they must consider the testimony

of the witnesses who allege that the defendant confessed his crime to them; they must take into consideration any contradictions, and incline toward the side on which they honestly believe the truth exists, and, starting with the fact of the death of José Cordoves Berríos, they must decide whether the man brought into court by the *fiscal* and described in his information is or is not guilty, and, if so, of which degree of the two into which murder is divided; he finally explains what is to be understood by "beyond a reasonable doubt," which does not mean "without any doubt," because it would be impossible for the mind to arrive at a state of certainty by the use of such fallible means as lie within imperfect human nature. "Beyond a reasonable doubt" means that after the jury shall have examined the value of all the evidence with a dispassionate and serene mind in conjunction with all the contradictions noted, it will arive at a moral conviction of the guilt or innocence of the defendant.

These are, in substance, the instructions submitted to us in the form of stenographic notes, without the necessary authenticity. The appellant attacks them and we, in view of the importance and gravity of this case, which involves the life of a man, and in honor to the learned counsel for the defense, have carefully considered them; and notwithstanding the imperfect and improper manner in which they have been brought to this appeal, we believe that they comply with the requirements of section 206 of the Penal Code and 266 of the Code of Criminal Procedure. And we say that the form thereof is imperfect and improper, in view of the provisions of section 300 of said Code of Criminal Procedure.

If we consider that the charge of the jury was taken down by a stenographer the notes thereof should have borne an indorsement showing the action of the court, and then they would have formed part of the record and any error therein could be used on appeal as if it had been included in the statement of facts or bill of exceptions. But we have already seen that the stenographic copy contains nothing of this sort, not

even the signature of the judge, and under the circumstances we were right in affirming that we could put aside any consideration of the point relating to the charge.

It is necessary to consider the fifth error of law, consisting, as alleged, "in not admitting all the testimony proposed by the defense for the purpose of impeaching the veracity of the witnesses Ruperto Felix Melendez and Juan Diaz," because there is something in the record itself. As a matter of fact, it appears that a list of witnesses was presented by the defense, not included among the witnesses sworn the preceding day, who were not permitted to be examined by the court, whereupon counsel for the defense noted an exception; but subsequently the court considered this incident, hearing counsel for the defense, and finally decided to permit 5 of the witnesses on the list to be examined, who, it must be assumed, were selected therefrom by counsel, and that they testified, inasmuch as no subsequent protest or exception whatsoever appears on this point. It is to be assumed, therefore, that there was perfect agreement on this point. Neither the names nor the number of the witnesses is of record.

Neither can we omit a consideration of the sixth error of fact referred to in the brief of the appellant, because it assumes that it cannot be held to have been proved that the murder of Jose Cordoves Berrios was committed with the knife found, without even an attempt having been made to show by experts whether said knife bore spots or traces of human blood.

If, as a matter of fact, the knife did contain some spot visible to the naked eye suspected of being human blood, such expert examination would have been proper in due time, as would have been an autopsy, and the consequent medical report.

But, it is alleged, these circumstances were not submitted to the jury, and the latter, with the evidence taken before it and considered as a whole, held this and the other facts necessary to find a verdict of guilty to have been proved. This

verdict cannot be attacked upon the evidence which was not taken. It must be attacked by duly establishing the errors committed in weighing the evidence taken.

We cannot give the same consideration to the other allegations of the appellant in his brief to this Supreme Court. If this brief be read carefully, it will be observed that substantially the fourth alleged error of law and the first of the fifth errors of fact are confined to the weighing of the evidence, to such an extent that the latter are included under the heading of ''The verdict is contrary to law and the evidence.''

How could we from these simple stenographic notes reach a conclusion contrary to that reached by the twelve citizens who composed the jury which, as said by many defenders of this institution, is above all the medium by which the public conscience is represented.

How could we affirm, without endangering the high ends of justice, that the judge permitted the *fiscal* to put leading questions, that he limited the number of witnesses of the defense, and that the jury erred in considering, in its honest judgment to have been proved, that Dones was in San Lorenzo the night of the crime; that he killed Jose Cordoves Berrios; that the weapon with which the crime was committed was found in the place where the defendant himself concealed it, according to his confession to Ruperto Felix Melendez, and that said knife had belonged to and had been constantly used by the defendant, Francisco Dones Ramos?

With regard to the exceptions, Chapter VI states when they may be taken by the defendant and in what cases, and describes the form and manner indispensable on each occasion in order that they may produce their effects in an appeal of this character, section 299 providing that the bill of exceptions must contain only the evidence necessary to present the questions of law upon which the exceptions were taken, and empowering the judge upon settling the bill, whether agreed to by the parties or not, to strike out all other matters contained therein.

And with regard to the statement of facts, rule 17 of the Rules for District Courts of the Island of Porto Rico, approved by the Attorney General, must be followed. Said rule provides:

"Rule 17.—After the trial of a cause, the defense, or the prosecuting attorney, may make out a written statement of the facts given in evidence on the trial, and submit the same to the opposite party, or his attorney, for inspection; such statement of facts must contain a full and complete statement of all the facts given in evidence on the trial of the cause, setting forth the testimony of each witness in concise narrative form, and shall include copies of all papers, documents, and exhibits adduced in evidence, and the certificate of the parties, or their attorneys, attached thereto, must so state. If the defendant, or his attorney, and the prosecuting attorney, agree upon the statement of facts, they shall submit it to the judge, and he shall, if he finds it correct, approve and sign it, and the same shall be filed with the secretary, and a copy thereof shall be incorporated in the transcript on appeal. Should the parties fail to agree, the statement of facts shall then be made up by the judge, who shall certify to the same; and shall also certify that the parties failed to agree. Such statement of facts must be made up and filed within such time as the court may designate, not to exceed the time allowed for the settlement of bills of exceptions."

At any rate, whether we consider the case of the verdict being contrary to law or the evidence, or the decision of the judge admitting or rejecting witnesses, we would still find ourselves without the bill of exceptions or statement of facts bearing a guarantee of the exactness of what really occurred at the trial, a guarantee which could have been given to the bill or statement by the agreement of the *fiscal* if possible, and in any case by the approval of the judge, which is the intention of the provisions above cited.

The appellant might here make the objection that the stenographic notes transcribed on the typewriter "shall constitute *prima facie* the minutes of the court and may be used on all motions for new trials, review or appeal, when minutes

of the court may be used," as provided in the last paragraph of section 5 of an Act approved March 10, 1904, "To provide for the appointment, duties, and compensation of stenographer of the district court."

But this point has already been duly considered and the real meaning and scope of this provision has been fixed in the case of *The People of Porto Rico* v. *Juan de Mata Eligier and Juan del Carmen Grolo,* decided by this Supreme Court on November 20, 1905, and in the case of *The People of Porto Rico* v. *Eusebio Torres Candelaria,* decided on November 8, 1905, both from the Arecibo court.

It was held in those cases that there is an error in the Spanish translation, because the English edition provides that such copies shall constitute *prima facie* the minutes of the court, not of the record of the trial (as a document signed by the judge), and the word "minutes" means, according to the authorities therein cited, and to which we refer, the brief summary or memorandum of what occurred in the court during the trial, but never has the testimony of witnesses been included in the minutes, as alleged here, in support of a prayer for a new trial; and, under these circumstances, these copies, certified to by the stenographer, cannot constitute *prima facie* evidence of what occurred at the trial in relation to the evidence.

Finally, the appellant cites section 364 of the Code of Criminal Procedure in his brief, to prove to us that we have the power to order a new trial. This is undeniable. But this is not a capricious or arbitrary power. It is subordinate to justice. And if we were able to find now that a fundamental error had been committed in the information or the judgment, we would have no hesitancy in making the proper order to re-establish the right encroached upon, availing ourselves of the power vested in us by said provision—a power which has been ratified by the first section of the Act of the Legislative Assembly approved May 30, 1904.

But here we find nothing of this sort. Here the evidence

is under discussion. Nothing is shown us to the contrary, and we must assume that the verdict and the judgment are in accordance with the law and the evidence.

Under the circumstances nothing remains, though we regret it, but to comply with our duty, denying a new trial and affirming the judgment rendered by the Humacao court on April 24th of the current year, with the costs against the appellant.

*Affirmed.*

Chief Justice Quiñones, and Justices Hernández, MacLeary, and Wolf concurred.